UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES and FRIENDS OF THE CLEARWATER,<br><br>     Plaintiff,<br><br>v.<br><br>RICK BRAZELL, Supervisor of the Nez Perce National Forest; FAYE KRUEGER, Regional Forester of Region One of the U.S. Forest Service; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; and UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the U.S. Department of Interior,<br><br>     Defendant. | Case No. 3:12-cv-00466-MHW<br><br>**ORDER DENYING MOTION FOR INJUNCTION PENDING APPEAL** |

On June 6, 2014, Alliance for the Wild Rockies and Friends of the Clearwater ("Plaintiffs") filed a motion for injunction and stay pending resolution of Plaintiffs' appeal to the U.S. Court of Appeals of the Ninth Circuit of this Court's decision entered on November 27, 2013. *See Mem. Dec. and Order*, Dkt. 30. Defendants oppose the

request for a stay and injunction pending appeal on the grounds that the request is based on the same arguments addressed in the Court's ruling denying Plaintiffs' Motion for Summary Judgment and finding that injunctive relief was not warranted.

Having reviewed the parties' submissions and taken a fresh look at its 63-page Memorandum Decision and Order, the Court denies Plaintiffs' motion for an injunction and stay.

## TIMING OF MOTION FOR STAY

The Court entered its decision on November 27, 2013 denying Plaintiffs' motion for summary judgment and granting the Defendants' cross motion for summary judgment. Plaintiffs did not file their notice of appeal until almost two months later, on January 22, 2014. Plaintiffs not only did not move for any type of expedited briefing schedule and ruling from the Ninth Circuit, it requested an extension of time to file its opening brief which it ultimately filed on June 2, 2014.

According to Defendants, Plaintiffs were advised in February of 2014 that the Little Slate Project ("Project") logging operations would start in June of 2014 (since moved to July of 2014 due to weather and other factors). In March of 2014, two of three timber harvest contracts set to commence in June were purchased by Idaho County's largest private employer who paid a down payment of $150,000 and posted a performance bond of $100,000.[1] Finally, on June 6, 2014, almost four months after filing its notice of appeal and virtually on the eleventh hour of when the ground work was to

---

[1] Plaintiffs state that this money could be refunded to the purchasers if the stay is granted.

commence, Plaintiffs moved to stay the three timber sales that were scheduled to proceed. This will be discussed in more detail later in this Order.

## LEGAL STANDARD

It is well established that the standard for issuance of an injunction pending appeal is the same as the standard for issuance of a preliminary injunction. *See Golden Gate Restaurant Association v. City and County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008); *Southwest Alaska Conservation Council v. U.S. Army Corps of Engineers*, 472 F.3d 1097, 1100 (9th Cir. 2006).

Generally, a party seeking an injunction must demonstrate the existence of four factors: (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm absent the issuance of an injunction, (3) that the balance of equities tips in its favor, and (4) that issuance of an injunction is in the public interest. *Winter v. Nat. Res. Defense Council*, 555. U.S. 7, 20 (2008). However, the Ninth Circuit recognizes that an injunction may still be warranted without a demonstrated likelihood of succeeding on the merits where the moving party raises "serious questions going to the merits" and demonstrates that the "balance of hardships tips sharply" in its favor as long as it also demonstrates "the likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (referring to its "serious questions" test and finding that the test survived *Winter*).

A delay in seeking a preliminary injunction, while not dispositive, is an appropriate factor to be considered by a court in determining whether to grant the

injunction.  *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984).

## DISCUSSION

The parties and the Court are quite familiar with the underlying facts in this case. The overall goal of the Little Slate Project is to reduce fire risk and improve aquatic habitat in the Forest.  The more specific goals and the plans to implement those goals are set forth in Appendix A attached to this decision.

### A. Plaintiffs' Endangered Species Act Claims

Almost nine pages of Plaintiffs' opening brief in support of its motion for an injunction and stay are directed at the impact on the bull trout if the timber harvesting and other construction activities proceed ahead now in the Project area.  Defendants first point out that while the Project will ultimately involve six separate timber sales, only three are under contract for 2014 and none will involve any bull trout habitat.  Aside from the fact that bull trout habitat will not be affected by the three sales now under contract, it is important to keep in mind that the U.S. Fish and Wildlife biological opinion found that *at most* only 1.27 miles out of the nearly 20,000 miles of critical bull trout habitat would be affected by the Project.

Plaintiffs have not responded to Defendants' additional arguments that delaying the three timber sales and watershed restoration activities pending appeal will actually exacerbate the existing problems with sedimentation in the streams that is generally harmful to bull trout habitat.  These activities would ultimately include decommissioning

and improving roads, completing 100-acres of soil restoration, improving 59 road crossings and 73 trail stream crossings, and reducing motorized access to many areas.

This Court has previously found that the Forest Service and Fish and Wildlife Service properly analyzed the impacts to bull trout in their Biological Assessment and Biological Opinion. Furthermore, the Court continues to adhere to its finding that Plaintiffs' best available science claim lacks merit because Plaintiffs have pointed to no better science to support their argument that "superior" data would support their position.

The Fish and Wildlife Service anticipated only minor impacts from any in-stream work because of the timing and other restrictions on how the work will be performed. Furthermore, it should be kept in mind that the three timber sales currently under contract do not involve any in-stream work. While Plaintiffs have entirely focused on the impact of this work in the short term, described as "minor" by the agencies, they have never addressed the longer term benefits which will make the bull trout population healthier and more viable once the Project is completed.

Plaintiffs argue that they have both raised serious questions going to the merits of the ESA claim and demonstrated a hardship balance that tips sharply in their favor, factors one and three of the *Winter* test. As recently stated by the Ninth Circuit in *Alliance for the Wild Rockies,* a "sliding scale" approach may be used so that a stronger showing of one element may offset a weaker showing of another. *Id.* at 1130.[2] However,

---

[2] *Alliance* arose in the context of a motion for a *preliminary* injunction. Such motions generally arrive in a Judge's chambers before any discovery or development of a record. This motion arises after

as noted above, the sliding scale approach applies only to two of the *Winter* factors. A plaintiff must still show "that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135.

The merits of the ESA claim were addressed in the ruling on the cross motions for summary judgment, and the Court found in favor of the Defendants on that issue. Applying the first *Winter* factor to Plaintiffs' request for injunctive relief and a stay pending appeal, the Court finds Plaintiffs are not likely to succeed on the merits on their argument that a stay is appropriate at this time since the 2014 contracts do not involve bull trout habitat. Whether the Plaintiffs have established the second and fourth *Winter* factors, irreparable injury and whether an injunction is in the public interest, will be discussed below.

### B. Plaintiffs' National Forest Management Act Claims

Plaintiffs argued in their motion for an injunction and stay that serious questions have been raised and a hardship balance tips sharply in their favor on their claim that the Forest Service violated the National Forest Management Act by failing to ensure species viability. Plaintiffs state the Forest Service does not have population trends on management indicator species and population trends have not been monitored in the Forest.

---

the Court has reviewed the administrative record and considered cross motions for summary judgment. The merits of Plaintiffs' claims have been addressed at least at the trial level. How the "sliding scale" plays at this level is somewhat unclear.

**ORDER DENYING MOTION FOR INJUNCTION PENDING APPEAL - 6**

The Forest Plan does not require project-level monitoring of management indicator species. At the project-level, the Forest Service is required to provide management for minimum viable populations of old-growth and snag dependent species by adhering to the standards stated in Appendix N of the Forest Plan. The Project more than met the Appendix N requirements. By assessing available population data, species sightings, and habitat data, it was not arbitrary and capricious for the Forest Service to conclude that the Project would not threaten the management indicator species in the Forest.

Applying the same legal standards for issuance of an injunction and stay pending appeal discussed earlier, the Court finds that Plaintiffs are not likely to prevail on the merits of this claim for all of the reasons discussed in the Court's prior decision and have not raised serious questions going to the merits of their claim coupled with a showing that the balance of hardship tips sharply in their favor. In other words, they have satisfied neither the *Winter* test nor the sliding scale favored by the Ninth Circuit.

### C. Plaintiffs' National Environment Policy Claims

Plaintiffs have incorporated into their arguments that Defendants have violated ESA and NFMA companion arguments that Defendants have also violated NEPA by failing to take a hard look at the Project's impact on bull trout habitat and the continued viability of management indicator species. As to bull trout, Plaintiffs suggest the Forest Service's failure to take a hard look at the Project's impact on bull trout population and habitat warrants granting a stay at this point until the appeal is decided. This argument

would certainly have merit *if* the Forest Service had not taken the requisite hard look, but that is not the case here. The environmental impact statement contained in the record cites to extensive information that the Forest Service considered and disclosed about hydrology and fisheries in the Project area. The Court did not find this to be a cursory analysis.

Turning to the second NEPA claim, the Court finds the Forest Service took a hard look at the affect the Project would have on the continued viability of management indicator species and their habitat. The Project meets the standards required by the Forest Plan to ensure the species would not be threatened in the Forest. While there would be some short term impacts, overall, the species in the Forest would benefit in the future since the project would strengthen the ecosystem that the Forest Service has currently found to be in a very unhealthy state.

Plaintiffs have failed to satisfy either the *Winter* test or the sliding scale test in either of these NEPA challenges.

### D. Irreparable Harm and Public Interest

The Court will combine its discussion of the second and fourth factors of the *Winter* test. Defendants argue that Plaintiffs have not met their burden of making a clear showing of irreparable harm by substantial proof which is necessary before a stay and injunctive relief may be granted. Plaintiffs state that challenged activities will irreparably harm its members' interests in the naturally functioning ecosystems of the Forest, particularly their interest in viewing, studying, and enjoying native wildlife populations.

**ORDER DENYING MOTION FOR INJUNCTION PENDING APPEAL - 8**

The Court recognizes these interests are very legitimate and in certain cases interference with these interests can constitute irreparable harm. Furthermore, if the environmental injury is sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment.

The facts and studies relied on by the Forest Service and contained in the record, however, support just the opposite outcome than the one posited by Plaintiffs. The Forest Service reached a reasonable conclusion that allowing the Forest to remain in its current condition would leave it unhealthy and would be worse for the environment. To put it another way, allowing the current conditions to exist could lead to "actual and irreparable" injury.

The Ninth Circuit has recognized that determining whether an injunction serves the "public interest" often involves weighing competing public interests. *Alliance for the Wild Rockies*, 632 F.3d at 1138. An argument in favor of issuing an injunction is to avoid irreparable environmental injury while an appeal is pending. However, an injunction should not be granted unless that public interest outweighs other public interests that cut in favor of *not* issuing the injunction. *Id.* In some cases, preserving the natural state can outweigh economic concerns where the plaintiffs were *likely* to succeed on the merits. *Id.* That is not the case here.

The Court has already found that Plaintiffs are not likely to succeed on the merits of their claims, and Defendants have articulated substantial economic and public safety concerns if a stay is granted. Pertinent to the economic factor, the first three timber sales

**ORDER DENYING MOTION FOR INJUNCTION PENDING APPEAL - 9**

are expected to support 390 jobs, $14.5 million in labor income, $3.2 million in federal tax and $41.7 million in state tax revenue.  This will occur primarily in Idaho and Clearwater counties where unemployment remains above the national and state-wide averages.

As stated at the beginning of this Order, the Court has serious concerns about the timing of the motion for a stay and injunction.  Plaintiffs' delay has affected the companies that bid on the three contracts and the public as well.  It negatively impacts the communities where the employees live, the employees themselves, and the viability of the timber companies.  Whether this factor fits more appropriately in a discussion on the balancing of equities or in a discussion of the affect on the public interest and irreparable harm, the fact that the motion for a stay was made merely weeks before work was to commence has prejudiced these groups.  Since commitments to fill orders for timber have been entered into in expectation of starting the harvest, the companies state that finding replacement timber on the open market can cost $3.9 million dollars.  If a stay is granted, a decision from the Ninth Circuit may not be issued for some time.  Because the work can only be done in the summer and early fall, any delay jeopardizes the ability to complete the harvest in 2014.  The Project's harvest schedule reflected an effort to capture timber value before it was lost to continued infestation of insects.

If a stay is granted, the public's interest in improving the health of the forest and watershed restoration efforts would also be delayed.  According to Defendants, the lack of wildfires, past activities, and disease from the mountain pine beetle have created an

**ORDER DENYING MOTION FOR INJUNCTION PENDING APPEAL  - 10**

unnatural buildup of trees and vegetation susceptible to fire in the Project area and obviously there are legitimate reasons why a wildfire would not be in the public interest.

## CONCLUSION

Although the Court recognizes that the standard for issuance of an injunction on appeal is the same as for the issuance of a preliminary injunction, the Court is in a different position here than it would be in a case where it was considering an injunction upon the filing of a case.  Here, the Court is thoroughly familiar with the facts, the administrative record, and the legal issues through its consideration of and ruling on the merits of cross summary judgments.

After due consideration of the arguments of the parties, the Court finds that Plaintiffs have not met their burden under *Winter* or, to the extent it applies, the sliding scale argument.

## ORDER

**IT IS ORDERED that** Plaintiffs' Motion for Injunction Pending Appeal (Dkt. 37) is **DENIED**.

DATED: July 25, 2014

Honorable Mikel H. Williams
United States Magistrate Judge

**Alliance for the Wild Rockies, et al.,**
v.
**Brazell, et al.**

**Case No. 3:12-cv-00466-MHW**

**APPENDIX A**

The goals of the Little Slate Project are to:

★ Improve watershed conditions and aquatic habitats to support recovery of aquatic species by: reducing sediment delivery, restoring connectivity of aquatic habitats, restoring stream side shade, improving stream bank stability and the hydrologic function of hillslopes.

★ Revise road and trail management to reduce resource impacts from roads, trails and OHV use. This includes designating a road and trail system for public motorized use.

★ Use timber harvest or slashing, and activity fuels treatments to achieve desired species distribution and structure by:

- o Regenerating aging lodgepole pine to recover economic value and provide early seral habitat.

- o Creating a more natural range of vegetation disturbance patterns by increasing the size of some past disturbance openings, while promoting some larger patches of mature forest.

- o Increasing the relative proportion of long-lived fire resistant tree species by restoring or regenerating to western larch or ponderosa pine, while maintaining existing large diameter trees.

★ Improve soils impacted from past mining and timber harvest activities in the project area.

ROD (FS580.)

The specific plans for the Little Slate Project as set forth in the Record of

Decision are:

★ Conduct timber harvest and fuel reduction treatments on 2,598 acres.

★ Decommission 49 miles, reconstruct 15 miles, and improve 63 miles of existing roads. Construct 12 miles of temporary roads and decommission them after use.

★ Complete 100-150 acres of soil restoration, 0.75 miles of riparian restoration, and 75 acres of gully stabilization. Complete instream channel rehabilitation at 13 sites.

★ Treat 59 road and 73 trail stream crossings.

★ Expand the existing rock quarry at the Road 536/441 junction by 2 acres to provide material for road reconstruction work.

★ On system roads, reduce yearlong motorized access by 2 miles and reduce seasonal motorized access by 13 miles.

★ Construct new or relocate 6 miles of trail, reconstruct 32 miles and decommission 4 miles of existing trail.

★ Add 1.2 miles of nonsystem trail to the Forest Service trail system. Decommission 2.7 miles of nonsystem trails.

★ Place seasonal travel restrictions on all motorized trails currently open to yearlong motorized use within the project area.

(FS579.)